## JAMES BREEN *v.* THE PEOPLE.

Where a criminal charge rests upon circumstantial evidence, and where, upon any
     hypothesis, however improbable, consistent with the circumstances proved,
     the accused may be innocent, it is erroneous for the court to charge the jury
     that "it is incumbent on them to convict." The question of guilt in such
     cases, is for the jury and not for the court.
On a trial for crime, a quarrel between the complainant and the party against
     whom he testifies, though disconnected with the subject matter of the com-
     plaint, may be taken into consideration by the jury in ascertaining the motive
     and weighing the credibility of the witness.

THE prisoner was indicted for having stolen from Alexander
R. Thorpe, the complainant, two promissory notes, known as
bank bills, for the payment of and of the value of five dol-
lars each, one promissory note, known as a bank bill, for the
payment of and of the value of three dollars, and two promis-

---

sory notes of the kind known as bank bills, for the payment
of and of the value of one dollar each.

He pleaded not guilty, and was tried, before the Recorder,
in the Court of General Sessions of the city of New York, in
January, 1858.

It appeared on the trial that the prisoner was a bar-tender
for Thorpe, and had been in his employ, in that capacity, from
February until the 8th December, 1857, when Thorpe vio-
lently assaulted the prisoner, and inflicted upon him severe
bodily injuries, for which the prisoner made a criminal com-
plaint against Thorpe, and had him arrested. Two days after
Thorpe had him so arrested, he preferred a complaint against
the prisoner for petit larceny, upon which charge the indict-
ment in this case was subsequently found. The assault and
battery upon Breen was not connected with the accusation
of larceny, but was prompted by a supposed grievance of a
different character.

*Thorpe* testified: That on the 18th of November, 1857, he
marked a $3 bill on the Atlantic Bank of Brooklyn, N. Y.,
and a $2 bill of the Bank of New York, and placed them in
the till, and that on the 19th of November, 1857, he also
marked and put in the till a $5 bill on the Leather Manufac-
turers' Bank. That on the night of the 20th of November,
1857, these bills were brought into his room by Alexander R.
Spencer, who handed them to him, and informed him that he
had found them in Breen's pocket. That he, Thorpe, did not
look at the bills or identify them that night, as he was then
going to bed, but that he identified them next morning as the
same bills he had marked and put in the till. That Spencer
lived with him, and was the fellow bar-keeper of Breen, and
that Breen had no authority to make up the cash except when
he, Thorpe, was sick, or Spencer was away. It appeared how-
ever, on the cross-examination of Thorpe, that Breen was in
the practice of paying out small amounts for incidental ex-
penses, as for lemons and milk and ice, in sums of from $3 to
$5. Thorpe owed Breen for wages from $60 to $80.

*Spencer* testified: That he found the bills in question in the coat pocket of Breen, about one o'clock at night, on the 20th November, 1857; that they were done up in small wads; that his coat was at the head of the bed; that he did not know there were any marks on the bills; could not see any; that he gave the note to Thorpe.

Breen was not arrested on the charge of larceny till the 8th day of December, 1858.

·Testimony was introduced to show the good character of the prisoner.

After the summing up of the counsel, the court, among other things, charged the jury, as matter of law, that Thorpe and Spencer testified to a state of facts, which, if true, established a larceny of the prisoner, and rendered it incumbent upon the jury to convict him, to which the prisoner's counsel excepted.

The court also charged the jury that the assault and battery committed on the defendant by the complainant, Thorpe, as testified to by the latter, had nothing whatever to do with the case of the defendant, it having occurred subsequent to the larceny (if one was committed), and that the jury should dismiss it from their consideration altogether, to which the prisoner's counsel also excepted.

· The prisoner having been convicted, the case was removed to this court by writ of error.

*Henry L. Clinton,* for the plaintiff in error.

I. The court below erred in charging the jury "that the first two witnesses, Thorpe and Spencer, testified to a state of facts which, if true, established a larceny of the prisoner, and rendered it incumbent upon the jury to convict him."

The rule of law on this subject is correctly laid down in .*Greenleaf's Evidence* (3 *vol.,* § 29), as follows: "It is therefore a rule of criminal law that *the guilt of the accused must be fully proved.* Neither a mere preponderance of evidence, nor any weight of preponderant evidence, is sufficient for the purpose, unless it generate full· belief of the fact to the exclusion

Breen *v.* The People.

of all reasonable doubt." * * * "It is elsewhere said that the persuasion of guilt ought to amount to a moral certainty, or ' such a moral certainty as convinces the minds of the tribunal, as reasonable men, *beyond all reasonable doubt.*' And this degree of conviction ought to be produced when the facts proved coincide with, and are legally sufficient to establish the truth of the hypothesis assumed, namely, the guilt of the party accused, and are inconsistent with any other hypothesis. For it is not enough that the *evidence goes to show his guilt;* it must be inconsistent with the reasonable suppositions of his innocence."

The error of the learned Recorder, in charging that the facts testified to by the witnesses Thorpe and Spencer, if true, established the guilt of the prisoner, is very apparent. Whether the circumstances, *if true,* established guilt; or whether they were as consistent (if not more so) with innocence as with guilt, *was purely a question of fact for the jury.*

Even the proof of the identification of the $3 and $5 bills, marked by Thorpe and put in his till, and alleged to have been found in defendant's possession, is by no means clear and satisfactory; but assuming, for argument's sake, that the identification is sufficiently proven, it by no means follows that the defendant did not come honestly in possession of the bills; on the night of the 20th of November, he is found in possession of the two bills, one of which was marked and put in the drawer on the preceding day, and the other two days before.

1st. He (defendant) might have paid out these bills, either in paying the incidental expenses of the bar, or in making change for customers, and received them back in the way of change in his individual transaction; as, for example, in defraying his expenses.

2d. He might have changed a bill of his own of larger denomination; for example, a $10 bill, by putting such bill in the till, and taking out for his own use the $5 and $3 bills in question, and another $2 bill.

It must be remembered that the defendant had the lawful custody of the money in the till. His position as bar-tender

required him to receive money and pay it out constantly. His being in possession of money marked and put in the till by his employer, did not raise a presumption of larceny.

II. The court below erred in charging the jury "that the assault and battery inflicted on the defendant by the complainant, Thorpe, as testified to by the latter, had nothing whatever to do with the case of the defendant, having occurred subsequent to the larceny (if one had been committed), and that the jury should dismiss it from their consideration altogether."

The *motive* actuating a complainant in making a criminal charge against a party with whom he has had a difficulty, and with whom he is on ill terms, is always a proper subject of consideration for the jury in weighing the testimony of such complainant. The authorities are uniform on this point. (*Titus* v. *Ash.,* 4 *Foster* [*N. H.*] *R.,* 319 ; *Fulsom* v. *Brown,* 5 *Foster* [*N. H.*] *R.,* 195 ; *Atwood* v. *Welton,* 7 *Conn.,* 66 ; 1 *Greenl. Ev.,* § 450 ; *Rex* v. *Wewen, cited* 2 *Camp.,* 638 ; 1 *Stark. Ev.,* 155 ; *People* v. *Murray,* 1 *Wheeler Cases,* 662 ; *Swift's Ev.,* 148 ; *Roscoe's Cr. Ev.,* 181, 184 ; *Rob* v. *Hackley,* 23 *Wend.,* 50 ; *People* v. *Vane,* 12 *Wend.,* 78.)

In *Titus* v. *Ash* (4 *Foster* [*N. H.*] *R.,* 319, 331, 332), the court, per Perley, J., hold the following language : "A quarrel between a witness and the party against whom he testifies, may be proved to discredit the witness." * * * "The court will not inquire which side was in the wrong. But the degree of violence in the quarrel is manifestly *material* to the point in question. Was it a slight and accidental difference on some trifling subject, such as would be likely to leave behind no trace of ill-will or prejudice ? or a serious and inveterate feud, *such as would perpetuate a grudge in* the mind of the witness against the party ? If the witness admits a misunderstanding, but denies the circumstances which shows that it was serious, he denies the substantial fact attempted to be proved. If he wholly denies the quarrel, *he may be contradicted ;* and if he denies all that makes the quarrel material, we think he may be contradicted on the same principle. (*Harris* v. *Tippet,* 2

Breen *v.* The People.

*Camp.*, 638; *Atwood* v. *Welton*, 7 *Conn.*, 66; *Pierce* v. *Gibsin*, 9 *Vt.*, 216; *Rixey* v. *Bags*, 4 *Leigh R.*, 333.)

In *Martin* v. *Farnum* (5 *Foster* [*N. H.*] *R.*, 199), the court, per Bell, J., observes: "It is always a material question, what is the state of feeling of a witness towards one or both of the parties; it is always proper, upon a cross-examination, if there is supposed to be any occasion for it, to inquire whether the relations of a witness are those of a defendant or friend to one of the parties, or whether he has any bias or prejudice, or hostility, which might affect his testimony, or induce a jury to distrust his statements, or weigh them with care. The statements in answer to such inquiries by the witness, are always regarded as material, and may be contradicted directly."

In *Atwood* v. *Welton* (7 *Conn.*, 71), the court, per Dagget, J., say: "The question whether the defendant had a controversy with the witness," &c., "surely was relevant to the issue; for it tended to prove such a state of mind towards the defendant, as might well be submitted to the jury, to discredit his testimony as to material facts. There is hardly a point about which there can be less doubt." (*Swift's Ev.*, 148; 16 *Mass.*, 185; 17 *Mass.*, 160; 2 *Camp. R.*, 530; 1 *Starkie's Ev.*, 135.)

In *Pierce* v. *Gibson* (9 *Vt. R.*, 222), the court, per Williams, Ch. J., say: "A party has a right to have the jury know if there is any hostility or bad feeling existing between the witness and himself at the time of his testifying. For that purpose it may be shown that a law-suit has existed; that a violent altercation has taken place, arising to personal violence."

These authorities show beyond all question that the personal difficulty between defendant and the complainant, "*arising to personal violence*," was a *material* subject for the consideration of the jury, and it was gross error in the court below to charge that it "had nothing whatever to do with the case of the defendant," * * * "and that the jury should dismiss it from their consideration altogether."

The court below properly admitted the evidence, and having admitted it, it should have been left to the jury to attach to

it such importance as they deemed proper in weighing the evidence of the complainant. The court erred in its charge as to both points, to which defendant's counsel excepted, and a new trial should be granted.

*John Sedgwick* (Assistant District Attorney), for the defendants in error.

*Per curiam.* There was error in both portions of the charge.

Judgment reversed, and a new trial ordered.

---

NEW YORK GENERAL SESSIONS. September Term, 1859. Before
- *Abraham D. Russell*, City Judge.